UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                         :

TIMOTHY HARNETT,                   :

                     Petitioner,   :

                                 :         08-CV-1061 (JPO)

                -v-          :

                                 :       OPINION AND ORDER

JAMES T. CONWAY,             :

                   Respondent.  :

                                 :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Petitioner Timothy Harnett filed this petition for a writ of habeas corpus against

Respondent James T. Conway on February 1, 2008.  (Dkt. No. 1.)  Harnett asserts several

claims—previously raised on direct appeal or in state post-conviction proceedings—as to the

illegitimacy of his conviction in New York state court for sodomy and weapons possession.  As

set out below, these claims are without merit.  Harnett further claims that he was subject to a

violation of double jeopardy and to judicial vindictiveness due to the imposition of a period of

post-supervision release by a state trial judge in a collateral proceeding several years after the

initial imposition of his sentence.  This claim was not exhausted in state court and does not

appear to be procedurally barred.  Because the claim is not meritorious, the Court rejects it as

well.  Accordingly, Harnett's petition is denied.

I.      **Background**

      A.      **Conviction, Initial Sentence, and Post-Conviction Challenges**

      Harnett was convicted of sodomy and criminal weapons possession in state court in 2000

after a jury trial, and was sentenced to a term of eighteen years' imprisonment.  No term of post-

release supervision was imposed at that time.  (Dkt. No. 11 ("Sentencing Transcript"), at 8.)

Harnett's conviction and sentence were upheld on direct appeal to the Appellate Division of the

New York State Supreme Court, and the New York Court of Appeals denied him leave to appeal. *See People v. Harnett*, 769 N.Y.S.2d 888 (App. Div. 1st Dep't 2004); *lv. denied*, 814 N.E.2d 471 (N.Y. 2004).

Harnett next filed a series of applications in state court for post-conviction relief.  (Dkt. No. 4 ("Amended Petition") ¶ 13.)  In his first motion under New York Criminal Procedure Law § 440.10, dated April 4, 2005, Harnett claimed that his indictment was defective because it lacked sufficient detail about the charges against him.  (Dkt. No. 12 ("Wang Decl.") Ex. 6.)  In the second motion pursuant to § 440.10, dated May 17, 2005, Harnett raised the same point regarding a claimed defect in the indictment and also argued that the trial judge erred in admitting evidence of an unindicted act of anal sodomy, which constituted a variance from the indictment.  (*Id.* Ex. 7.)  In August 2005, the Bronx Supreme Court rejected the second motion. It ruled that Harnett's motion was barred under New York Criminal Procedure Law § 440.10(2)(c), because "sufficient facts appeared on the record to have permitted adequate appellate review of the jurisdictional soundness of the indictment and the propriety of the admission of the evidence in question," but the defendant had not raised them in his direct appeal.  (*Id.* Ex. 10, at 2.)  The Court of Appeals denied leave to appeal from this decision.  (*Id.* Ex. 11.)

Harnett then filed a coram nobis petition dated November 25, 2005.  In this petition, Harnett claimed that his appellate lawyer had rendered ineffective assistance when he failed to argue that there were three acts of sodomy testified to by the complainant, but only one sodomy charge.  (*Id.* Ex. 12.)  Harnett claimed that it was "impossible to ascertain what alleged act of sodomy was found by the jury to have occurred"—i.e., whether it was the count on which he was indicted or a different act—and that his lawyer was ineffective for failing to argue this point.

(*Id.*)  The Appellate Division summarily denied the application in October 2006, and the Court of Appeals denied leave to appeal.  (*Id.* Exs. 14-15.)

Harnett filed another coram nobis petition dated March 10, 2007, raising the same arguments as the November 2005 petition.  (*Id.* Ex. 21.)  The Appellate Division construed this as a motion seeking reargument on the prior order and denied relief.  (*Id.* Ex. 22.)  The Court of Appeals denied leave to appeal.  (*Id.* Ex. 23.)

### B.      Challenge to Post-Release Supervision and Resentencing

In 2001 or 2002, according to Harnett, the New York Department of Correctional Services[1] ("DOCS") "administratively added an additional penalty of five years post-release supervision" to his sentence.  (Dkt. No. 52, at 1.)  In response, Harnett filed a motion in Bronx Supreme Court pursuant to New York Criminal Procedure Law § 440.20 to set aside the term of post-release supervision.  (Wang Decl. Ex. 16.)  As a basis for the § 440.20 motion, Harnett cited the Second Circuit's decision in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), which granted relief to a New York prisoner upon whom DOCS had administratively imposed a sentence of post-release supervision.  Harnett protested that any period of post-release supervision not imposed by a court in his case was likewise unlawful.

A state judge—the judge who presided over Harnett's trial—appointed counsel for Harnett on the § 440.20 motion.  (Wang Decl. Ex. 17.)  At a July 2007 hearing on the § 440.20 motion, the state court vacated the original sentence as improper.  (*Id.* Ex. 18, at 2.)  The court then heard argument from both parties and resentenced Harnett to the same eighteen-year prison term, along with an additional period of five years post-release supervision.  (*Id.* Ex. 18, at 9; *id.* Ex. 19.)  Harnett filed a request in state court seeking leave to appeal the resentencing.

---

[1] The agency is now known as the Department of Corrections and Community Supervision.

C.      **Federal Habeas Petition**

While Harnett's appeal on his resentencing was pending, Harnett filed this habeas

petition.  The petition incorporates all of the grounds that he raised on direct appeal; in his post-

conviction § 440.10 motions and coram nobis petitions; and in his § 440.20 motion to correct his

sentence.  (Amended Petition ¶ 13.)

In March 2009, after the parties had briefed the issues, Harnett moved to stay this

proceeding in order to await the exhaustion of his state appeal.  (Dkt. Nos. 20-21.)  On December

10, 2009, Judge Koeltl, to whom this case was originally assigned, granted Petitioner's motion to

stay his petition for a writ of habeas corpus pending Harnett's appeal in the Appellate Division.

In October 2011, this case was reassigned to the undersigned.  (Dkt. No. 38.)

In November 2013, the Appellate Division denied Harnett leave to appeal from his

resentencing by the Bronx County Supreme Court.  (Dkt. No. 45.)  In April 2014, the parties

were directed to file letter briefing regarding the Appellate Division's decision.  (Dkt. No. 47.)

The Court has received additional briefing from both Petitioner and Respondent.  (Dkt. Nos. 49,

52.)

**II.     Discussion**

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S.

62, 68 (1991).  "Once a claim has been 'adjudicated on the merits' by the state court," federal

habeas review of a state court decision "is subject to the deferential standard" set out in the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.  *See Earley v.

Murray*, 451 F.3d 71, 74 (2d Cir. 2006).  Under AEDPA, a writ of habeas corpus cannot be

granted unless the state court's decision on the claim was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA standard is "difficult to meet," and requires "that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted).

## A.      Claims Raised on Direct Appeal

Harnett incorporates the arguments he made on direct appeal into his habeas petition. Each is considered in turn.

*Sufficiency of the evidence.*  First, Harnett claims that the evidence was insufficient to convict him of sodomy and the possession of a weapon.[2]  (Amended Petition ¶ 13; Ex. 1, at 21.) A sufficiency of the evidence claim is reviewed in federal habeas proceedings under a "twice-deferential" standard. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  First, the evidence underlying a conviction "is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Under this standard, "judges must be highly deferential to the jury's verdict of conviction." *Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011).  And second, a "state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker*, 132 S. Ct. at 2152 (citing *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam)).  "[A] federal court may not overturn a

---

[2] If Harnett's argument is that the conviction was against the *weight* of the evidence, this claim fails on habeas review because it is a matter of state law.  *See Smith v. Lee*, No. 11-CV-0530 (MKB), 2014 WL 1343066, at *10 (E.D.N.Y. Mar. 31, 2014) ("It is well settled that a 'weight of the evidence' claim is distinct from a[n] 'insufficiency of the evidence' claim and is a state claim . . . that is not reviewable in a federal habeas proceeding." (citing *McKinnon v. Superintendent*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order)).  Because such a claim is not cognizable in the present circumstances, the Court construes Harnett's claim as an attack on the sufficiency of the evidence.

state court decision rejecting a sufficiency of the evidence challenge simply because the federal

court disagrees with the state court." *Cavazos*, 132 S. Ct. at 4.

There is no question that the state court's rejection of the sufficiency claim was

reasonable.  It is plain on the face of the trial record that the state's principal witness testified that

Harnett had brandished a weapon and anally penetrated her without her consent.  Viewing the

evidence in the light most favorable to the prosecution, a reasonable jury could have convicted

Harnett beyond a reasonable doubt.  On this ground, the Appellate Division considered and

rejected Harnett's sufficiency claim, holding that "[i]ssues of credibility were properly

considered by the jury and there is no basis for disturbing its determinations." *Harnett*, 769

N.Y.S.2d at 888.

The fact that the jury acquitted Harnett of other charges, including rape and oral sodomy,

does not require a contrary result.  The case law governing sufficiency "leaves juries broad

discretion in deciding what inferences to draw from the evidence presented at trial." *Coleman v.

Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam).  The Appellate Division held that while the

jury "rendered a mixed verdict," this "is explainable and does not warrant a different

conclusion." *Harnett*, 769 N.Y.S.2d at 888; *cf. United States v. Powell*, 469 U.S. 57, 64-66

(1984).  The state court's decision denying Harnett's sufficiency claim is not objectively

unreasonable.  Therefore, Harnett's claim on this basis is denied.

*Colloquy with one prospective juror when defendant was not present.*  Second, Harnett

claims that one juror was questioned and dismissed when he was not present.  (Amended Petition

¶ 13; Ex. 1, at 26.)  The basis for this was a notation in the trial transcript, which stated that a

prospective juror entered the "robing room," engaged in a colloquy with the judge and the

attorneys for both parties, and was excused from the jury by consent of both attorneys.  (Dkt. No.

13 ("Voir Dire Tr.") at 255.)  At the end of the colloquy, however, the transcript reflected that

the prospective juror exited "the courtroom," not the robing room.  (*Id.*)

"[A] criminal defendant has the right to be present at all stages of the trial where his

absence might frustrate the fairness of the proceedings," and "the impaneling of the jury is one

such stage."  *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (internal quotation marks

omitted).  However, not every interaction among the judge, a juror, and a defense lawyer is the

"sort of event which every defendant had a right personally to attend under the Fifth

Amendment."  *United States v. Gagnon*, 470 U.S. 522, 527 (1985) (per curiam).

Here, the Appellate Division determined that the record "fails to support defendant's

claim that he was excluded from a conference with a prospective juror," and instead concluded

that the court "followed a standard procedure which ensured defendant's presence each time a

[prospective juror] asked to address the court in private."  *Harnett*, 769 N.Y.S.2d at 888.  A

"determination of a factual issue made by a State court shall be presumed to be correct" on

habeas review, and a petitioner has the burden to rebut this presumption by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1).  The state court's factual finding was not an "unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28

U.S.C. § 2254(d), and accordingly, the habeas claim on this basis fails.

*Excessive sentence.*  Harnett claims that his sentence was excessive, an argument that

was raised and rejected on direct appeal.  *See Harnett*, 769 N.Y.S.2d at 888 (stating that the

Appellate Division "perceive[d] no basis for reducing the sentence").  This claim is cognizable

on federal habeas review only if it raises an issue of federal or constitutional law.  *See, e.g.*,

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors

of state law.").  If Harnett attempts to raise an Eighth Amendment claim on the basis of his

punishment, it fails.  Under the law of this Circuit, "[n]o federal constitutional issue is presented

where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam).  Harnett does not argue that the sentence falls outside of the range, and indeed admitted in his brief on direct appeal that the maximum sentence on the sodomy count was twenty-five years.  Accordingly, the excessive sentence claim fails.  *See John v. Griffen*, No. 13 Civ. 922 (RWS), 2014 WL 866277, at *15 (S.D.N.Y. Mar. 4, 2014) ("Because Petitioner's underlying sentence did not exceed the maximum prescribed, Petitioner's excessive sentence claim is inappropriate for habeas relief.").  The claim for relief on this ground is denied.

### B.    Claims Raised in State Post-Conviction Proceedings

### 1.    The § 440.10 Motions

Harnett filed two post-conviction motions pursuant to New York Criminal Procedure Law § 440.10, in which he raised claims (1) that his indictment was defective under New York law because it did not provide a sufficiently detailed account of the alleged crimes occurred, and (2) that the trial court erred in permitting evidence of unindicted acts of anal sodomy other than the single count in the indictment.

These claims are procedurally barred.  Under state law, a court reviewing a § 440.10 motion must deny it if the defendant failed to raise the grounds for the motion on direct appeal, even though "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted . . . adequate review of the ground or issue raised upon the motion."  N.Y. Crim. Proc. Law § 440.10(2)(c).  "The purpose of this rule is to prevent Section 440.10 from being employed as a substitute for direct appeal when the defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so."  *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (alterations and internal quotation marks omitted).  The bar of

§ 440.10(2)(c) was the ground that the Bronx Supreme Court relied upon in denying Harnett's § 440.10 motion in 2005. (Wang Decl., Ex. 10, at 2.)

"Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "It is well established that when a state prisoner has failed to raise his federal constitutional claim in the state courts in accordance with state procedural rules, including those requiring that claims of constitutional defects in the trial be raised on direct appeal from a conviction, there has been a procedural default that bars federal habeas review unless the petitioner shows both cause for the noncompliance and prejudice resulting from the alleged constitutional violation." *Roman v. Abrams*, 822 F.2d 214, 222 (2d Cir. 1987). Because Harnett has failed to establish either cause or prejudice for his failure to raise the claim on direct appeal, the claims raised in the § 440.10 motion fail.[3]

## 2. The Coram Nobis Petitions

In coram nobis petitions filed in November 2005 and March 2007, Harnett argued that his appellate lawyer was ineffective for failing to raise the issue of a claimed variance from the indictment, or a duplicitous sodomy count, in the briefing of Harnett's direct appeal. Both petitions were denied summarily by the Appellate Division. (Wang Decl. Exs. 14, 22.)

"[T]he constitutional right to effective assistance of counsel extends to appellate counsel." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). Habeas relief can be granted on an ineffective assistance claim "only if the state-court decision unreasonably applied the . . . standard for ineffective-assistance-of-counsel claims established by *Strickland* [*v. Washington*,

---

[3] Furthermore, even were the Court to address this claim on the merits, it would still be unavailing for the reasons explained in the following section, which analyzes the similar claims that Harnett included in his coram nobis petitions.

9

466 U.S. 668, 687 (1984)], in which [the Supreme] Court held that a defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).  A petitioner shows prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Under the first prong, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687).

The deferential AEDPA standard "applies even where there has been a summary denial." *Pinholster*, 131 S. Ct. at 1402; *see also Harrington*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Because both the *Strickland* standard and AEDPA provide for deferential subsequent review, it is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Mirzayance*, 556 U.S. at 123.

In showing deficient performance under *Strickland*, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. Counsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).  Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v.*

*Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Thus, "a petitioner may establish constitutionally inadequate performance if he shows that

counsel omitted significant and obvious issues while pursuing issues that were clearly and

significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

   Harnett's duplicitousness or variance claim is rooted in the evidence at trial, in which the

government's lead witness testified that Harnett inserted his penis into her anus three separate

times over the span of some minutes.  It is true that the New York Court of Appeals has held that

charges are duplicitous where there is "such a multiplicity of acts encompassed in single counts

as to make it virtually impossible to determine the particular act of sodomy or sexual abuse as to

which the jury reached a unanimous verdict." *People v. Keindl*, 502 N.E.2d 577, 582 (N.Y.

1986).  However, in that case, the defendant was charged with criminal sexual acts spanning

periods as long as ten to sixteen months, and often the prosecution alleged that there were

multiple criminal acts each week during these periods.  *Id.* at 580-81.  It is far from clear that the

rule in *Keindl* would be extended by New York courts to mean that each distinct penetration

would constitute a separate charge.  *See People v. Snyder*, 953 N.Y.S.2d 430, 431 (App. Div. 4th

Dep't 2012) (rejecting duplicitousness claim because "[t]he evidence establishes that the

multiple punches and/or kicks delivered by defendant constitute a single uninterrupted assault

rather than a series of distinct criminal acts"), *lv. denied*, 993 N.E.2d 1285 (N.Y. 2013); *see also*

*People v. Alonzo*, 945 N.E.2d 495, 497 (N.Y. 2011) (rejecting separate sexual abuse charges

arising from a "single, uninterrupted occurrence of forcible compulsion," premised on the

defendant's groping of different body parts of victims).

   Furthermore, this claim appears not to have been preserved for direct appeal.  Harnett

may have been able to seek relief on this ground by stating that he suffered from ineffective

assistance of his *trial* counsel for failing to preserve this claim.  But this means that Harnett's

current claim would have to be that appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness.  Harnett did not raise either of these claims in his petition in state court.

On the basis of the foregoing, the Court cannot conclude that the Appellate Division acted unreasonably in denying Harnett's coram nobis petition.  The ground for appeal that he notes here is far from certain to be a winning ground, even had it been properly preserved. Harnett's claim for relief on the basis of ineffectiveness of his appellate counsel is denied.

### C.    Resentencing Claim

Finally, Harnett's habeas petition presents his claim that his 2007 resentencing—which added a five-year term of post-release supervision to his existing eighteen-year prison term— constituted a second punishment for the same criminal conduct and arose from vindictiveness by the state court judge, in retaliation for Harnett's filing of a petition for post-conviction relief to correct his sentence.

A period of post-release supervision was mandatory under the relevant state law at the time of Harnett's conviction.  *See* 1998 N.Y. Laws 1; N.Y. Penal Law § 70.45 (2000).  The state judge did not orally impose the required term of post-release supervision at sentencing, and neither the prosecutor nor Harnett's lawyer raised the issue.  (Sentencing Transcript, at 8.) Harnett's situation was not uncommon after the enactment of the New York statute implementing required terms of post-release supervision.  It appears that many defendants were sentenced by state judges who did not specifically impose statutorily required periods of post-release supervision at their sentencing hearings.  Subsequently, New York correctional authorities attempted to add the post-release supervision to these defendants' sentences administratively.  In 2006, the Second Circuit held in *Earley v. Murray* that a sentence of post-release supervision could not be imposed in this manner.  451 F.3d 71, 76 (2d Cir. 2006).

Rather, the court held, "the proper way to correct an illegal sentence is 'through a judicial proceeding, in the defendant's presence,' such as a resentencing 'in accordance with the law.'" *Prendergast v. Rivera*, No. 06 Civ. 5314, 2011 WL 4899945, at *8 (E.D.N.Y. Oct. 13, 2011) (quoting *Earley*, 451 F.3d at 76).[4]  As noted above, Harnett was resentenced to a term of eighteen years in prison, along with a five-year term of post-release supervision.

### 1.    Exhaustion

To begin with, Harnett has not exhausted his present challenge to the addition of the term of post-release supervision in the New York courts.  Under the habeas statute, the writ may not be granted unless the applicant "has exhausted the remedies available" in state court, or there are circumstances that would preclude the use of such remedies.  28 U.S.C. § 2254(b)(1).  Here, Harnett did not raise his double jeopardy or due process claims in the § 440.20 petition that led to his resentencing.  That petition challenged only the ability of DOCS to administratively impose a period of post-release supervision upon him.  (Wang Decl. Ex. 16.)  In response, the Bronx Supreme Court issued a May 2007 Interim Decision and Order that recognized that the state conceded that DOCS "lacked authority to impose a period of [post-release supervision]," and went on to conclude that the initial sentence, without the statutory period of post-release supervision, was "illegal."  (*Id.* Ex. 17, at 1.)  At a subsequent hearing in July 2007—at which Harnett was represented by court-appointed counsel—no argument was raised as to double jeopardy or due process implications of the resentencing.  (*See id.* Ex. 18.)  Rather, Harnett's lawyer argued that the sentence should be vacated altogether, or alternatively that a sentence of 13 years' imprisonment and five years' post-release supervision should be imposed instead.  The

---

[4] New York later implemented a statutory scheme to correct sentences imposed without the explicit imposition of post-release supervision.  *See* N.Y. Corr. Law § 601-d; *Ridgeway v. Zon*, 424 F. App'x 58, 60 (2d Cir. 2011) (summary order).  Harnett's resentencing preceded the implementation of this scheme.

prosecutor urged a sentence of five years' post-release supervision to follow the eighteen-year prison sentence, a proposal that the state court adopted.  (*Id.* at 4-5, 9.)  After Harnett was resentenced by the Bronx County Supreme Court, the Appellate Division denied him permission to appeal from that decision.  (Dkt. No. 45.)  Thus, Harnett never filed a brief challenging that resentencing on the merits or raising his double jeopardy and due process arguments.  His only filing was his request for permission to appeal.  (*See* Wang Decl. Ex. 20.)

The double jeopardy and due process arguments have not been exhausted.  And there appears to be a route for Harnett to bring this claim in state court: the New York Criminal Procedure Law bars successive § 440.20 motions only if they are brought on grounds that have already been "determined on the merits upon an appeal from the judgment or sentence," and authorizes courts to deny such motions if the issue was previously determined in another type of proceeding.  *See* N.Y. Crim. Proc. Law § 440.20(2)-(3).  Accordingly, there does not appear to be either "an absence of available State corrective process," or "circumstances . . . that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B).  Even assuming that Harnett's legal position is otherwise meritorious, then, the failure to exhaust precludes the Court from granting his habeas petition.  *See id.* § 2254(b)(1)(A).  As analyzed below, however, the Court can nonetheless deny unexhausted claims in a habeas petition if they fail on the merits.  *See id.* § 2254(b)(2).

## 2.   Procedural Bar

The state asserts that Harnett's petition is procedurally barred because he did not file a notice of appeal from his renewed sentence, and his time for filing such an appeal elapsed on August 24, 2007.  (Dkt. No. 15 ("State's Br.") at 30.)  But in fact, Harnett attempted to appeal in papers dated August 19, 2007.  (Wang Decl. Ex. 20.)  Rather than appealing from the sentence

itself, as the state says he should have, he asked for permission to appeal from the decision on his § 440.20 petition—the petition that led to Harnett's resentencing.[5]

The state says that Harnett's claim "could only be brought on direct appeal" (State's Br. at 30), citing § 440.10—the provision of New York law permitting collateral review of a *conviction*, not a sentence. Subsection (2)(c) of § 440.10 indeed says that claims must be brought on direct appeal if the defendant could have raised the ground on direct appeal and the defendant unjustifiably failed to do so. In contrast, § 440.20—which permits motions to set aside a sentence—contains no such limitation. Rather, it limits successive § 440.20 motions only on issues that have been "previously determined on the merits." N.Y. Crim. Proc. Law § 440.20(2)-(3); *see Levine v. Comm'r*, 44 F.3d 121, 126 (2d Cir. 1995); *Saxon v. Lempke*, No. 09 Civ. 1057 (PGG) (KNF), 2014 WL 1168989, at *33 (S.D.N.Y. Mar. 21, 2014) ("While CPL § 440.10 mandates the denial of a motion to vacate a judgment in the case of an unjustified failure to raise a claim on direct appeal, no such mandate exists in CPL § 440.20 . . . ." (footnote omitted)). Thus, there is no bar under state law to Harnett's ability to bring a § 440.20 petition in state court on the unexhausted claims.

---

[5] The state's argument that Harnett failed to appeal the sentence contravenes the principle that courts are to construe pro se pleadings liberally. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam); *Pezhman v. City of New York*, 812 N.Y.S.2d 14, 18 (App. Div. 1st Dep't 2006). Under New York Criminal Procedure Law § 450.15, which Harnett cited in his papers, a defendant may apply for leave to appeal an "order denying a motion by the defendant made pursuant to section 440.20, to set aside a sentence other than one of death." Here, Harnett's motion to vacate his sentence was *granted*, not denied, although the end result of the resentencing left him in a worse position than before. Thus, Harnett's notion that he should ask for leave to appeal the outcome of the § 440.20 motion is not surprising, especially in light of the fact that he was proceeding pro se. Moreover, Harnett had an appeal "as of right," because he was appealing a "sentence other than one of death," pursuant to Criminal Procedure Law § 450.10(2). Thus, it strikes this Court as odd that the Appellate Division refused Harnett the plenary appeal to which he had the right, and rather denied him leave to appeal after a delay of over six years—apparently because Harnett believed he needed the state court's permission to appeal when he did not. As explained below, however, the Appellate Division's disposition of Harnett's request for leave to appeal is not dispositive here.

### 3.      Merits of the Double Jeopardy and Due Process Claims

Claims in a federal habeas petition can be denied on their merits, regardless of the fact that they have not been exhausted.  *See* 28 U.S.C. § 2254(b)(2).  Because Harnett's double jeopardy and due process claims are unmeritorious, the claim on these grounds is denied.

*Double jeopardy claim.*  The Double Jeopardy Clause of the Fifth Amendment provides that the government cannot put a defendant in jeopardy twice for the same offense.  U.S. Const. amend. V.  "This prohibition reflects a constitutional policy of finality in the criminal context, and is a principle that is deeply ingrained in the Anglo-American system of jurisprudence." *United States v. Razmilovic*, 507 F.3d 130, 136 (2d Cir. 2007) (citation, ellipsis, and internal quotation marks omitted).

The Supreme Court has explored in several cases whether resentencing under certain circumstances can give rise to double jeopardy ramifications.  As a general matter, the Supreme Court's double jeopardy decisions "establish that a sentence does not have the qualities of constitutional finality that attend an acquittal."  *United States v. DiFrancesco*, 449 U.S. 117, 134 (1980).  "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Monge v. California*, 524 U.S. 721, 730 (1998) (internal quotation marks omitted); *see also DiFrancesco*, 449 U.S. at 137 ("[T]he Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase.").

In *Bozza v. United States*, 330 U.S. 160 (1947), the defendant, who was convicted of the "operation of the business of distilling to defraud the Government of taxes," *id.* at 164, was sentenced under a statute that required a "minimum mandatory sentence of fine of one hundred dollars and imprisonment," *id.* at 165.  At sentencing, however, the trial judge imposed a sentence of imprisonment only and omitted mention of a fine.  After about five hours, during

which time Bozza was in federal jail, the defendant was called before the judge a second time, and a sentence of both imprisonment and the mandatory fine was imposed on the defendant. *Id.* at 165-66. The Supreme Court rejected Bozza's double jeopardy argument, holding that "the fact that petitioner has been twice before the judge for sentencing and in a federal place of detention during the five hour interim cannot be said to constitute double jeopardy as we have heretofore considered it." *Id.* at 166. The Court noted that, under Bozza's proposed rule, "no valid and enforceable sentence [could] be imposed at all" if the judge's "inadvertent error cannot be corrected in the manner used here." *Id.* And the sentence, "as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense." *Id.* at 167.[6]

More recently, in *United States v. DiFrancesco*, the Supreme Court considered whether a criminal defendant could be resentenced to a greater punishment following an appeal by the government. 449 U.S. at 136. The Court held that there is "no absolute constitutional bar to the imposition of a more severe sentence on reconviction after the defendant's successful appeal of the original judgment of conviction." *Id.* at 135. Rather, the rule "permitting an increase of sentence on retrial, is a 'well established part of our constitutional jurisprudence.'" *Id.* (quoting *North Carolina v. Pearce*, 395 U.S. 711, 720 (1969)). Accordingly, the Court held that a defendant could be resentenced to a greater term until his "legitimate expectations" in the finality of his sentence have attached. *Id.* at 137.

The Supreme Court cases do not establish the outer limits of when a defendant's legitimate expectation of finality may attach. In both *Bozza* and *DiFrancesco*, the length of time that elapsed before the defendants' resentencing was far shorter than in Harnett's case. Bozza

---

[6] Similarly, in a 1998 case, the Second Circuit held that a resentencing to a longer term—where the original term imposed was not permitted by state law—did not raise a double jeopardy issue because the petitioner "he had no legitimate expectation of finality in his original sentence, which was not authorized by law, was appealable by the government, and was modified only a week after it was imposed." *Williams v. Travis*, 143 F.3d 98, 99 (2d Cir. 1998) (per curiam).

waited only several hours before resentencing, and DiFrancesco was within the statutory period

for appeal.  Harnett, on the other hand, had served many years of his sentence—and the time for

the state to appeal the sentence pursuant to New York Criminal Procedure Law § 440.40 had

long since elapsed—by the time of his resentencing by the state court in 2007.[7]  Thus, further

exploration of the question is necessary.

New York case law on expectations of finality in these circumstances, developed after

Harnett's resentencing, would foreclose Harnett's claim.  In *People v. Williams*, 925 N.E.2d 878

(N.Y. 2010), the New York Court of Appeals considered a double jeopardy challenge brought by

another New York prisoner who was, on resentencing, given a term of post-release supervision

after that term had been omitted at the initial sentencing hearing.  The *Williams* court held that

there was no double jeopardy violation: because criminal defendants "are charged with

knowledge of the relevant laws that apply to them, they are presumed to be aware that a

determinate prison sentence without a term of [post-release supervision] is illegal and, thus, may

be corrected by the sentencing court at some point in the future."  925 N.E.2d at 889 (citations

omitted).  And, the court went on, as "long as an illegal sentence is subject to correction, a

defendant cannot claim a legitimate expectation that the originally-imposed, improper sentence is

final for all purposes."  *Id.* at 889-90.[8]  The final limitation for courts to resentence a defendant

---

[7] Harnett's resentencing, following a § 440.20 collateral attack on his sentence, shares
similarities with a defendant's resentencing to a greater sentence following a direct appeal, *see
DiFrancesco*, 449 U.S. at 136 (considering the difference between the imposition of a new
sentence after retrial and a resentencing after appeal to be "no more than a conceptual nicety"),
but the situations are not precisely alike.  Harnett, of course, filed his § 440.20 motion only after
DOCS had attempted to administratively impose a sentence of post-release supervision on him
without judicial process.

[8] Other federal courts have taken the position that an illegal sentence cannot engender a
legitimate expectation of finality for purposes of double jeopardy.  *See Jones v. Thomas*, 491
U.S. 376, 395 (1989) (Scalia, J., dissenting) (stating that in *Bozza* and in *DiFrancesco*, "the
defendant could not argue that his *legitimate* expectation of finality in the original sentence had
been violated, because he was charged with knowledge that the court lacked statutory authority

initially subject to an illegal sentence, the New York court ruled, was when the "initial sentence has been served and the direct appeal has been completed," after which "an additional term of [post-release supervision] may not be imposed." *Id.* at 890.

Another court in this circuit recently considered a habeas petition arising from a similar resentencing and rejected an analogous double jeopardy challenge.  In *Prendergast v. Rivera*, Judge Cogan of the Eastern District of New York assessed the petitioner's argument on habeas corpus that his resentencing violated the Due Process and Double Jeopardy Clauses.  2011 WL 4899945, at *3.  In state court, Prendergast's claim had been rejected on the merits by the New York Court of Appeals, which held (in a consolidated case governing six similar appeals) that such a resentencing did not violate the Double Jeopardy Clause.  *See People v. Lingle*, 949 N.E.2d 952, 955-56 (N.Y. 2011).  Judge Cogan rejected the double jeopardy claim, holding that (for purposes of AEDPA) the Court of Appeals' decision was a reasonable interpretation of federal precedent, and furthermore was "thoroughly apt," based on a "faithful and sensible application of *DiFrancesco*, consistent with relevant Second Circuit precedent."  *Prendergast*, 2011 WL 4899945, at *9.

Under New York's interpretation of the relevant double jeopardy law, there is no question that Harnett's claim would be denied.  Pursuant to the reasoning of *Williams*, Harnett would be presumed to have been aware of the required term of post-release supervision and thus

---

to impose the subminimum sentence in the first instance"); *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) ("A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification."); *accord United States v. Edmonson*, 792 F.2d 1492, 1496 & n.4 (9th Cir. 1986); *United States v. Crawford*, 769 F.2d 253, 257 (5th Cir. 1985); *United States v. Warner*, 690 F.2d 545, 555 (6th Cir. 1982).  However, the reasoning of some of these opinions may rely on the prior version of Federal Rule of Criminal Procedure 35(a), which stated that a court "may correct an illegal sentence at any time."  The current version states only that a court may "correct a sentence that resulted from arithmetical, technical, or other clear error" within fourteen days of sentencing. Fed. R. Crim. P. 35(a).

of the fact that his sentence was illegal.  Because Harnett still had many years left to serve on his initial sentence at the time of the resentencing, following the logic of the Court of Appeals, Harnett had no legitimate expectation of his sentence's finality until his release.

Here, there was no decision by a New York court on Harnett's double jeopardy claim, so the question is less clear-cut than it would be pursuant to New York case law.  The relevant Second Circuit precedent, though it does not answer the precise question, is also unfavorable to Harnett's claim.  In *McClain v. United States*, 676 F.2d 915 (2d Cir. 1982), the defendant initially was sentenced to fifteen years on a bank robbery count and ten years on an accompanying firearms count.  On appeal, the firearms conviction was vacated, along with the entire sentence, and the district court gave the defendant a new sentence of twenty years on the remaining bank robbery count.  *Id.* at 916-17.  The defendant appealed on double jeopardy grounds, but the Second Circuit rejected the challenge.  The Supreme Court decision in *DiFrancesco*, the court ruled, "teaches that appellant had no legitimate expectation of receiving only a fifteen-year sentence, because of the lack of finality accorded to sentences and because he should have been aware that under [the relevant statute] he could have been sentenced to twenty-five years."  *Id.* at 918.  By its terms, then, the reasoning of *McClain* could imply that a resentencing to a greater term that is within the statutory range does not give rise to double jeopardy concerns.[9]

Subsequently, in *United States v. Rico*, the Second Circuit held that "[w]here a new sentence is legally imposed, such a sentence may be greater than the original sentence being served without any violation of a defendant's rights under the double jeopardy clause."  902 F.2d

---

[9] Of course, *McClain* may be distinguishable in that the vacatur of the defendant's sentence followed from his filing of a petition pursuant to 28 U.S.C. § 2255, thus casting the question of his legitimate expectations of finality in a different light.

1065, 1068 (2d Cir. 1990).[10]   Furthermore, it held that the expectation of finality "comes from the prospect of release as defendant nears the end of his or her prison term."[11]   *Id.*   In a later case, the Second Circuit summarized *McClain* and *Rico* by stating that it was "[s]ignificant[]" that "in neither case did the newly imposed term exceed that which the defendant could reasonably have anticipated at his initial sentencing."   *Stewart v. Scully*, 925 F.2d 58, 63-64 (2d Cir. 1991).[12]

Applying these principles to the case at hand, the Court concludes that Harnett's double jeopardy claim cannot succeed.  It is uncontroverted that his initial sentence, without the period of post-release supervision, did not conform with the New York sentencing statute in effect at the time.  Further, Harnett's new sentence was legally imposed by the state trial court within the statutory range for the crimes of conviction after the initial sentence was vacated following

---

[10] The decision in *Rico* was superseded on other grounds by the amendment of Federal Rule of Criminal Procedure 35.

[11] Other federal courts, when setting a temporal limitation for the period after which the legitimate expectation attaches, have generally agreed with the New York Court of Appeals that a legitimate expectation arises "once the defendant completed service of a sentence of incarceration."   *United States v. Daddino*, 5 F.3d 262, 265 (7th Cir. 1993); *see also United States v. Silvers*, 90 F.3d 95, 101 (4th Cir. 1996) (concluding that "reimposition of sentence on counts upon which [the defendant] had fully satisfied his sentence violated the Double Jeopardy Clause"); *United States v. Arrellano-Rios*, 799 F.2d 520, 524 (9th Cir. 1986) (declining to "decide at what point, in the service of a defendant's legal sentence, a reasonable expectation of finality arises," but holding that it is "certain" that such an expectation has arisen by the completion of a sentence of incarceration).

[12] In *Stewart*, the Second Circuit granted habeas relief vacating a defendant's resentencing to twenty-four years, a greater term than the original twenty-year sentence.  Stewart initially had been sentenced to a term of ten to twenty years, but this sentence violated a New York state statute that required certain ratios between the minimum and maximum sentences.  925 F.2d at 59-60.  Thus, Stewart—after serving three years of the sentence—filed a motion pursuant to § 440.20 requesting that he be resentenced to correct the error.  *Id.* at 60.  Stewart had been specifically promised in a plea agreement, however, that his maximum sentence would be twenty years.  The Second Circuit held that "[u]nder all the circumstances, including the plea agreement and his service of three years imprisonment under the original sentence, we conclude that Stewart had an expectation of finality with regard to his maximum term . . . ."  *Id.* at 65.  The facts of *Stewart*—specifically, the plea agreement setting a maximum term of twenty years, which the trial court recognized was a promise on which the defendant relied in deciding to plead guilty—distinguish it from the present case.

Harnett's § 440.20 petition, at a time when Harnett was still in custody serving his sentence. Harnett could have reasonably anticipated the term of imprisonment he is now serving, since he was subject to a sentence of up to twenty-five years and, under the statute in effect at the time, was subject to a mandatory term of supervised release.  Under the Second Circuit's interpretation of the law of double jeopardy, Harnett did not yet have the legitimate expectation of finality that arrives when a defendant nears the end of his prison term.  Thus, no double jeopardy interest was violated by Harnett's resentencing to a statutorily required term of post-release supervision to follow his term of imprisonment.

*Due Process Claim.*  Harnett's final claim is that the state trial judge violated his due process rights in vindictively resentencing him to a greater term in retribution for his filing of a § 440.20 motion to challenge his sentence.  (Amended Petition ¶ 13.)  In *North Carolina v. Pearce*, the Supreme Court held that the Due Process Clause "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."  395 U.S. 711, 725 (1969), *modified*, *Alabama v. Smith*, 490 U.S. 794 (1989).  When a longer term is imposed on a defendant on resentencing, a rebuttable presumption of vindictiveness applies—but only when "the circumstances of a case pose a realistic likelihood of such vindictiveness."  *Paradise v. CCI Warden*, 136 F.3d 331, 335 (2d Cir. 1998) (internal quotation marks omitted).  Thus, "when there is a strong likelihood that an increase in sentence is not the product of vindictiveness, *Pearce* does not apply."  *Somerville v. Hunt*, 695 F.3d 218, 222 (2d Cir. 2012).

The record reveals no reason to believe that the Bronx Supreme Court acted vindictively in resentencing Harnett to an additional term of post-release supervision.  The state trial court appears to have recognized that its original sentence was invalid under New York law due to the absence of the post-release supervision term, vacated that sentence, appointed counsel to

represent Harnett, held a hearing, and resentenced Harnett to the current term of eighteen years in prison and five years of post-release supervision.  (Wang Decl., Ex. 17-18.)  There is nothing to suggest that the state judge took these actions in retribution for Harnett's challenge to the attempt by New York prison authorities to impose a period of post-release supervision on him administratively.  Rather, the state court appears to have acted only in a good-faith—if belated— effort to sentence Harnett correctly pursuant to state law.

Accordingly, Harnett's due process claim is denied.

### D.    Certificate of Appealability

Under AEDPA, a habeas petitioner may not appeal unless a certificate of appealability ("COA") issues, on the condition that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  According to circuit precedent, a COA may be granted by a district judge.  *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).  The COA must "indicate the specific issue or issues" that satisfy the standard set out in the statute. *Blackman v. Ercole*, 661 F.3d 161, 164 (2d Cir. 2011) (per curiam).

Because there is no Supreme Court or Second Circuit precedent that precisely governs Harnett's double jeopardy claim, the Court issues a COA as to that claim.  On the other claims, Harnett has not made a substantial showing of the denial of a constitutional right, and no COA shall issue.

**III.**   **Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

A certificate of appealability is hereby issued on the question whether Harnett's

resentencing to an additional term of post-release supervision constituted a violation of his right

to avoid double jeopardy.

The Clerk of the Court is directed to close this matter.

SO ORDERED.


Dated:  November 17, 2014
        New York, New York

_____
J. PAUL OETKEN
United States District Judge


COPY MAILED TO PRO SE PARTY